IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF AARON JIMENEZ,
Deceased, by and through EUGENIO S.
MATHIS, personal representative,

      Plaintiff,

v.                                      No. 2:24-cv-00316 SCY/JMR

WEXFORD HEALTH SOURCES, INC., *et al.,*

      Defendants.

## NMCD DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF RYAN HERRINGTON, M.D.

COME NOW Defendants Alisha Tafoya Lucero, Wence Asonganyi, and Orion Stradford, all sued in their individual capacities (together, NMCD Defendants), through their undersigned counsel, and hereby submit their *Daubert* Motion to Exclude Testimony of Ryan Herrington, M.D. Plaintiff opposes this Motion, via email on August 25, 2025. At the outset, NMCD Defendants joined Wexford's Motion to Exclude (doc. 63) via document 65 and incorporate by reference Wexford's motion concerning Dr. Herrington's failure to comply with *Daubert* principles.

### I.      Introduction

Aaron Jimenez, an inmate at Central New Mexico Correctional Facility (CNMCF), first complained he was not feeling well to Wexford medical staff on March 22, 2021. Wexford medical staff treated Mr. Jimenez; however, Plaintiff claims the care provided was constitutionally inadequate. On April 3, 2021, Wexford medical staff saw Mr. Jimenez, and, noting troubling symptoms, including labored breathing, transported him to University of New Mexico Hospital where he died the next day. Plaintiff's claim against the NMCD Defendants, sued in their individual capacities only, is based on allegations that from "March 22, 2021 to April 3, 2021, Mr. Jimenez was denied critical medical care …." *Complaint* at ¶ 40 (Doc. 1). He alleges that they, as part of the collective group of Defendants

1

sued, "[f]ailed to properly monitor Mr. Jimenez's medical conditions; failed to perform adequate physical examinations, tests, and evaluations of test results; failed to refer Mr. Jimenez for higher/specialty care in a timely manner; and caused significant and inexcusable delay in the diagnosis of Mr. Jimenez's severe sepsis, endocarditis, and heart failure." *Id.* As a result of these allegations, which spanned less than a two-week period from March 22, 2021 to April 3, 2021, Plaintiff filed suit asserting a single claim against NMCD Defendants for Eighth and Fourteenth Amendment violations for deliberate indifference to his medical needs. *See, generally, Complaint, First Claim for Relief.*

The Court, in its Memorandum Opinion and Order dated December 16, 2024 (Doc. 42), rejected a claim against NMCD Defendants based on allegations that they knew of a specific risk of harm to Mr. Jimenez: "In sum, it is not plausible from the general, conclusory allegations in the complaint that any individual NMCD Defendant was on notice about Mr. Jimenez's symptoms and Wexford's treatment of them." Doc. 42 at 19. Although rejecting Plaintiff's theory of constitutional liability based on NMCD Defendants' direct knowledge of the risk of harm to Mr. Jimenez, the Court went on to consider whether Plaintiff stated a claim based on deliberate indifference to a <u>known</u> risk of harm to the general prison population in connection with Wexford's provision of medical care. *Id.* at 19. Plaintiff's expert, Dr. Ryan Herrington, has not offered any opinions against NMCD Defendants in this regard. *See Herrington Dep.* at 90:23-91:2; 98: 19-23; 108:24-110:15 (Exh. A hereto).

Importantly, however, Dr.  Herrington tried to offer unrelated opinions against NMCD Defendants, that were not previously disclosed, *see, e.g., id.* at 93:25-94:4; 98:6-14; 100:3-101:16; 102:19-103:17, which are detailed below. These are the opinions that are the subject of this Motion. As a preliminary matter, there is no legal basis to allow opinions that were not disclosed prior to the expert deadline and prior to Dr. Herrington's deposition. However, even were the Court to consider these surprise opinions, because they do not comply with *Daubert* principles, the Court should exclude them.

## II.    Legal Argument

### A.  Dr. Herrington's surprise opinions should be excluded because they are untimely

Fed. R. Civ. P. 6(b)(1)(B) provides that a court may extend the time to act "on motion made after the time has expired if the party failed to act because of excusable neglect." However, Fed. R. Civ. P. 16(b)(4) provides that a court may only modify pretrial deadlines "for good cause." Therefore, when a party seeks to extend a pretrial deadline after it has expired, both a showing of good cause and excusable neglect is necessary. *Candelaria v. Molina Healthcare, Inc.,* No. 18-cv-725-WJ-GBW, 2019 WL 4643946, at * 4 (D.N.M. Sept. 24, 2019).

The factors necessary to meet the excusable neglect standard are not in dispute: "'(1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reasons for the delay which includes whether it was within the reasonable control of the party seeking to show excusable neglect; and (4) whether that party acted in good faith.'" *Id.* at * 5 (internal citation omitted).

The good cause standard, on the other hand, focuses on the diligence of the party requesting the extension. *Id.; see also Husky Ventures, Inc. v. B55 Investments, Ltd.,* 911 F.3d 1000, 1020 (10th Cir. 2018). Practically, the diligence requirement can be shown if a plaintiff learns new information through discovery or if the underlying law has changed. *Gorsuch, Ltd., B.C. v. Wells Fargo Natl. Bank Assn.,* 771 F.3d 1230, 1240 (10th Cir. 2014).

Plaintiff cannot meet either standard or any of the factors that a court considers under either standard in connection with Dr. Herrington's disclosure of surprise opinions. In fact, as of the filing of this motion, Plaintiff has not even moved to introduce these new opinions or amended his expert witness disclosure to include them. Even if he had, however, he cannot overcome the danger of prejudice to NMCD Defendants by offering opinions their expert has not had the opportunity to address, after the deadline and after Dr. Herrington's deposition, or overcome the adverse impact on

3

the proceedings that would occur were the Court to give Plaintiff the opportunity to cure the effect of offering previously undisclosed opinions, both in terms of time an expense, including additional expert discovery (new written discovery into the nature and scope of Dr. Herrington's new opinions, a supplemental deposition of Dr. Herrington, and the work it would take NMCD Defendants' expert to address the new opinions, all which would come at taxpayer expense). There is no apparent reason Plaintiff could not have timely offered the surprise opinions within the pretrial deadlines imposed by the Court and doing so for the first time during Dr. Herrington's deposition does not evidence good faith. Therefore, Plaintiff cannot meet the excusable neglect standard. Likewise, Plaintiff cannot meet the good cause standard because there is no argument he learned new information through discovery that was previously unavailable and no argument that the underlying law has changed. Because there is no basis for the untimely disclosure of Dr. Herrington's surprise opinions, the Court should exclude them.

### B.  Dr. Herrington's surprise opinions do not comply with *Daubert* principles

Fed. R. Evid. 702 governs the admissibility of expert opinion testimony. It requires in part that a witness be qualified as an expert by knowledge, skill, experience, training, or education and that the expert's scientific, technical, or specialized knowledge will help the jury understand the evidence or determine a fact in issue. Trial courts are responsible to make certain that expert testimony will assist the jury in understanding the evidence and in determining the factual issues it must decide. *United States v. Ganadonegro,* 805 F. Supp. 2d 1188, 1196 (D.N.M. 2011).  Accordingly, not only must the trial court decide whether an expert is qualified to testify, but under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the trial court must also determine whether the expert's opinion testimony is the product of reliable methodology. *Id.* More specifically, *Daubert v. Merrell Dow Pharmaceuticals, Inc.* requires a court, in its role as gatekeeper, to scrutinize the proffered expert's reasoning to determine if it is sound.  *Id.*

4

The Supreme Court articulated a non-exclusive list of factors that weigh into a trial court's reliability determination, including (1) whether the method has been tested, (2) whether the method has been published and subject to peer review, (3) the error rate, (4) the existence of standards, and (5) whether the expert's method is generally accepted as reliable in the relevant professional community. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594-95 (1993).  Although *Daubert* involved scientific testimony, the case of *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999), extended the *Daubert* factors to skill or experience-based observation. *See also United States v. Adams,* 271 F.3d 1236, 1245 (10th Cir. 2001) (Rule 702 imposes a special obligation upon a trial judge to ensure that all expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable).

The burden rests upon the party seeking to present the expert testimony to establish admissibility by a preponderance of the evidence. *McClain v. Metabolife Intern., Inc.,* 401 F.3d 1233, 1237 (11th Cir. 2005); *see also Dodge v. Cotter Corp*., 328 F.3d 1212, 1222 (10th Cir. 2003) (holding that a party proffering expert testimony must show the expert's methodology is scientifically reliable). To be reliable under *Daubert*, an expert's testimony must be based on actual knowledge, not a mere subjective belief or unsupported speculation. *Dodge,* 328 F.3d at 1222. This means that expert opinions "'must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation.'" *Id.* (*citing Gomez v. Martin Marietta Corp*., 50 F.3d 1511, 1519 (10th Cir.1995)).

Here, Dr. Herrington has no factual basis for the surprise opinions offered against NMCD Defendants during his deposition that would ground his opinions in actual knowledge as required to meet *Daubert* principles. Specifically, Dr. Herrington first comments on the definition of "medical director" as it relates to his undisclosed opinions. *Herrington Dep.* at 94:2-4 (Exh. A hereto). This definition is based on NMCD Policy 170100. *Id.* at 97:25-98:4. However, not only did Dr. Herrington

fail to opine in his expert report about that policy or about the medical director in terms of duties towards inmates or standard of care, but he also conceded that he has no evidence that the NMCD medical director was culpable in connection with the events underlying this lawsuit. *Id.* at 98:6-23.

Notwithstanding that Dr. Herrington opined that he has no evidence that the medical director (NMCD Defendant Asonganyi) played any role in Mr. Jimenez's removal from COVID quarantine on March 22, 2021 (*Id. at p8: 19-23*0, nonetheless, Dr. Herrington testified in his deposition that NMCD's medical director bore responsibility for Mr. Jimenez's removal from COVID quarantine, *id.* at 99:23-101:16, despite not having reviewed NMCD's COVID protocols and despite not having even assessed whether NMCD was managing the outbreak of COVID correctly or incorrectly. *Id.* at 101:17-102:8. Without any facts or analysis, Dr. Herrington opined during his deposition that because medical care occurs in the context of the NMCD-Wexford contract, NMCD was responsible for managing the pandemic response such that it became indirectly responsible for Mr. Jimenez being taken out of quarantine. *Id.* at 103:9-17. However, Dr. Herrington readily conceded that he has never seen the operative contract between NMCD and Wexford, in addition to never having seen NMCD's COVID protocols. *Id.* at 103:18-23. Perhaps more importantly, Dr. Herrington admitted that NMCD's medical director played no role in the decision to remove Mr. Jimenez from quarantine. *Id.* at 104:14-105:5. Absent any facts relating to NMCD's COVID protocols, any information about NMCD's medical director's role in managing COVID in its facilities, the specifications in the NMCD-Wexford contract about the roles of NMCD versus Wexford in connection with managing the pandemic, and without even performing an analysis of the facts relating to NMCD's handling of COVID, Dr. Herrington's speculation as to NMCD's culpability are exactly the type of opinions divorced from the factual record that the Court should exclude in its gatekeeping function pursuant to *Daubert* principles. As such NMCD Defendants request that this Court exclude any opinion concerning NMCD's role or Mr. Asonganyi's role regarding the decision to remove Mr. Jimenez from COVID quarantine.

Dr. Herrington also commented in his deposition for the first time about utilization review. *Id.* at 95:21-97:2. However, again, his report contained no opinions about utilization management or review, *id.* at 97:3-11, and he does not opine in his deposition that NMCD Defendants had any culpability for utilization management or review decisions. Therefore, with no factual basis to opine as to the nature of any utilization management or review decisions or NMCD Defendants' role regarding utilization management or review decisions, let alone culpability in connection with those decisions, the Court should exclude Dr. Herrington from referencing utilization management or review as it pertains to NMCD.

In conclusion, the Court should exclude Dr. Herrington from even referencing NMCD or NMCD Defendants at trial and exclude any opinions from him against NMCD Defendants for the reasons set forth above.

WHEREFORE, NMCD Defendants respectfully request the Court to grant their Motion, to preclude Dr. Herrington from referencing NMCD or NMCD Defendants or from offering any opinions against them, and for such further relief as the Court deems appropriate.

Respectfully Submitted,

LAW OFFICES OF MARY T. TORRES

By: */s/Mary T. Torres*
Mary T. Torres
Attorney for NMCD Defendants
201 Third Street NW, Suite 1950
Albuquerque, NM  87102
(505)944-9030 (t)
(505)944-9091 (f)
mtt@marytorreslaw.com

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was submitted for efiling and service through "the ECF File & Serve" this 15th day of September, 2025.

By: *Mary T. Torres*
Mary T. Torres

7