**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

THE ESTATE OF AARON JIMENEZ, deceased, by
and through EUGENIO S. MATHIS, personal
representative of the estate,

        Plaintiff,

vs.                              1:24-cv-00316-SCY-JMR

WEXFORD HEALTH SOURCES, INC., *et al.*,

        Defendants.

## WEXFORD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]

COME NOW Wexford Health Sources, Inc., Michael Hildenbrandt, Joseph Montoya, Keshab Paudel, M.D., Raul Noches, Sarah Cartwright, David Whipple, Lynnsey Vigil, Denise Jones, Rajesh Sharma, and Heather Garza (collectively "Wexford Defendants"), by and through their attorneys of record, Park & Associates, LLC (Alfred A. Park and James J. Grubel) and for their Motion for Summary Judgment state:

### I.    SUMMARY OF ARGUMENT

This case arises from the death of Aaron Jimenez, who passed away on April 4, 2021, shortly after transfer to the University of New Mexico Hospital from the Central New Mexico Correctional Facility (CNMCF). Plaintiff alleges that Wexford Health Sources, Inc., and various individual employees, failed to timely diagnose and treat Mr. Jimenez's endocarditis. However, the undisputed material facts establish that Wexford and its employees were not deliberately indifferent to Mr. Jimenez's medical needs. He received medical care on multiple occasions for a range of non-specific and fluctuating symptoms, none of which reliably indicated an emergent

---

[1] Plaintiff indicated that this motion is opposed.

infection or heart condition until April 3, 2021, when he was immediately referred to an outside hospital.

The claims asserted under 42 U.S.C. § 1983 require a showing of deliberate indifference to a serious medical need, an exacting standard that cannot be met merely by showing negligence or even medical malpractice. Here, Mr. Jimenez received prompt nursing assessments, antibiotics for an ear infection, monitoring, lab work, vital sign checks, and ultimately transfer to an emergency room when his condition deteriorated. This consistent and responsive medical care defeats any claim of deliberate indifference.

Moreover, Plaintiff's Monell claim against Wexford lacks supporting facts. Plaintiff fails to identify any formal policy or widespread custom that was the moving force behind a constitutional violation. Allegations of systemic indifference, unsupported by specific facts or expert opinion, are insufficient as a matter of law.

Finally, the claims against the individually named Wexford employees fail because Plaintiff does not allege facts showing that these defendants personally participated in the alleged deprivation of rights, nor do they show that any such defendant had the requisite subjective awareness of and disregard for a serious medical need. Case authority is clear that "[s]upervisors can be held liable only for their own unconstitutional or illegal policies, and not for the employees' tortious acts". Pena v. Greffet, 922 F. Supp. 2d 1187, 1218 (D.N.M. 2013) quoting Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir.1998) (emphasis supplied).

The Court should grant summary judgment to Wexford and all individual Wexford defendants because Plaintiff cannot satisfy the legal standards applicable to any of his claims.

## II.    STATEMENT OF MATERIAL FACTS

1.    On March 8, 2021, Aaron Jimenez was admitted to CNMCF. [Complaint Doc. 1 at ¶25; Ex. A, Location History at 1]

2.    From March 8 to March 22, 2021, Mr. Jimenez was housed in the Reception and Diagnostic Center (RDC) for COVID-19 quarantine. [Ex. A, Location History]

3.    Mr. Jimenez submitted a Health Services Request Form on or about March 10, 2021. In that form Mr. Jimenez relayed that "I came Tuesday with some KOP[2] medication (Napraxin)(sic) for headaches and arthritis." He received the requested medications on March 11, 2021.  [Ex. B at 000030]

4.    On March 20, 2021, nursing staff evaluated Mr. Jimenez for nasal congestion and insomnia. He denied chest pain and shortness of breath. Medical staff saw Mr. Jimenez on March 20, 2021.  Medical records from that encounter indicate that Mr. Jimenez complained of nasal congestion and that he could not sleep. He denied shortness of breath or chest pain.  He stated: "I sleep with my mouth open."  Mr. Jimenez also relayed that his congestion had just started. [Ex. B. at 000029]

5.    On March 22, 2021, Mr. Jimenez presented to nursing staff complaining of feeling unwell. He appeared pale and diaphoretic, reported blurred vision, imbalance, vomiting, and a severe headache. He denied illicit drug use, which could have put healthcare providers on notice of the risk of systemic infection. Nursing staff contacted a higher-level healthcare provider, who ordered a complete blood count. Nursing staff gave Mr. Jimenez Tylenol (650 milligrams). Mr. Jimenez stated that he could not eat

---

[2] KOP refers to medicine an inmate is permitted to "keep on person."

or drink without vomiting. Nursing notes describe moist mucosa and pale, warm, dry skin. Nystagmus (rapid, repetitive eye movements) was observed. [Ex. B. at 000028]

6. On March 24, 2021, Dr. Matthew Rounseville evaluated Mr. Jimenez for complaints of right ear pain. Exam findings included swelling of the tympanic membrane. Dr. Rounseville diagnosed otitis media and prescribed Rocephin, Keflex for seven days, and antibiotic ear drops. [Ex. B. at 000026]

7. On March 26, 2021, Nurse Practitioner Kontasha Wise evaluated Mr. Jimenez. He reported that ear pain had improved, but his vision remained blurry. NP Wise ordered an eye examination and noted no acute distress. [Ex. B. at 000025]

8. On March 30, 2021, Mr. Jimenez submitted another medical request stating: "The right side of my head has been throbbing painfully for 2 days. I am walking like I am drunk." [Ex. B. at 000023]

9. On March 31, 2021, NP Wise saw Mr. Jimenez for a physical exam. He reported no current complaints. His vital signs were within normal limits, and he was afebrile. NP Wise ordered repeat labs and Gatorade for hyponatremia (low sodium). She noted "uneven gait with unsteady balance," but no acute findings. [Ex. B. at 000007–000009]

10. On April 2, 2021, Wexford staff reviewed Mr. Jimenez's complete blood count, which showed abnormal laboratory results consistent with chronic hepatitis. No acute symptoms were noted. [Ex. B. at 000031]

11. On April 3, 2021, at approximately 1:15 p.m., Mr. Jimenez presented to LPN Tiffany Howard with complaints of shortness of breath, chest pain, vomiting, and right upper quadrant pain. Howard consulted NP Wise, who ordered that he be sent to the emergency room. [Ex. B. at 000010]

12.    Mr. Jimenez was admitted to the ICU at UNMH, where he was found to have endocarditis, sepsis, and aortic regurgitation. [Ex. B.  000049]

13.    Mr. Jimenez died at UNMH on April 4, 2021, at 1:45 p.m.  Doc. 1 at ¶57

14.    Before April 3, 2021, Mr. Jimenez was seen at least six times by medical staff and received antibiotics, over-the-counter medications, physical exams, lab work, and specialist referrals (including a referral for an eye examination). [Ex. B. at 000007–000031]

15.    Mr. Jimenez's temperature was within normal limits at all recorded encounters before April 3, 2021. [Ex. B. ]

16.    Defendants' expert, Dr. Dean Rieger, explained that Mr. Jimenez had multiple risk factors for infective endocarditis, including a bicuspid aortic valve, a history of intravenous drug use, and extensive tattooing, and that it was likely Mr. Jimenez already had infective endocarditis when he entered CNMCF. [Ex. C, Rieger Report at 15 ¶ 2]

### III.    LEGAL STANDARD

#### A.  Summary judgment standard

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Such a finding is mandated when, after adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial. Breen v. Black, 709 Fed. Appx. 512, 513 (10th Cir. 2017); Johnson v. Mullin, 422 F.3d 1184, 1187 (10th Cir. 2005). An issue is "genuine" if sufficient evidence exists on each side of an issue that a rational trier of fact could resolve the issue either way. See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. Id. While disposal of a case by summary judgment prior to trial can be considered a drastic means of disposing of litigation, it is appropriate when no material issue of fact exists such that no jury could reasonably conclude in favor of the non-movant. Bones v. Honeywell Intern., Inc., 366 F.3d 869, 876 (10th Cir. 2004).

In order to avoid summary judgment, the party opposing a properly supported motion for summary judgment, "may not rest upon the mere allegations or denials of his pleading, but... must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Indeed, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. Although a plaintiff need not prove her entire claim at summary judgment, she is still required to present "specific facts showing that there is a genuine issue of trial." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The nonmovant's facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. FED. R. CIV. P. 56(c)(1)(A). *See* Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "[M]ere speculation, conjecture, or surmise" is insufficient to defeat a properly supported motion for summary judgment. Bones v. Honeywell Intern., Inc., 366 F.3d 869, 876 (10th Cir. 2004).

### B.  Deliberate indifference standard

The Supreme Court first recognized claims for deliberate indifference to a prisoner's medical needs in Estelle v. Gamble, 429 U.S. 97 (1976).  There, the court held that prison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton

infliction of pain." Id. at 104 (internal citation and quotation marks omitted). "[I]nadvertent failure to provide adequate medical care" is not enough, nor does "a complaint that a physician has been negligent in diagnosing or treating a medical condition … state a valid claim of medical mistreatment under the Eighth Amendment." Id., 105. Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id., 106.

The Supreme Court clarified the standards applicable to deliberate indifference claims in Farmer v. Brennan, 511 U.S. 825 (1994). The Court set out a two-pronged inquiry comprised of an objective and a subjective component. Under the objective inquiry, the alleged deprivation must be "sufficiently serious" to constitute a deprivation of constitutional dimension, e.g., a deprivation of medical care so egregious it is equivalent to cruel and unusual punishment. Id., 834. Moreover, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir.2001) (quotation omitted). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir.2001).

Under the subjective inquiry, the prison official is required to have a sufficiently culpable state of mind. Farmer v. Brennan. In describing the subjective inquiry, the Court made clear that a prison official "cannot be found liable under the Eighth Amendment for denying the inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Id., 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question

of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Id., 842.  That a serious medical need was "obvious" could be evidence of deliberate indifference, although a "prison official may show that the obvious escaped him" and avoid liability.  Id., 843 n. 8; see id., 842-43.

"Deliberate indifference means more than simple or even heightened negligence." Padilla v. Board of Commissioners of Bernalillo County, No. 07cv933 MCA/ACT, 2010 WL 11590291, *9 (D.N.M. Feb. 8, 2010) (citing Estate of Smith v. Silvas, 414 F.Supp.2d 1015, 1018 (D.Colo. 2006)). "It requires 'an act or omission purposefully committed by a person who must have realized that the conduct was unnecessarily dangerous or which conduct was done heedlessly or recklessly, without regard to the consequences, or without regard to the rights and safety of others.'" Padilla, No. 07cv933 MCA/ACT, 2010 WL 11590291, * 9 (quoting Zuchel v. City and County of Denver, Colo., 997 F.2d 730, 735 (10th Cir. 1993)). This requires "more than a supervisor's mere knowledge of his subordinate's conduct." Estate of Booker v. Gomez, 745 F.3d 405 (10th Cir. 2014).

### 1. Objective Element of deliberate indifference test

The objective element of the test for deliberate indifference is met if the deprivation of liberty at issue is "sufficiently serious." Farmer, 511 U.S. at 834.  A medical need is "sufficiently serious" if a doctor mandates treatment or the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999), citing Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980). *See, e.g.*, Mata v. Saiz, 427 F.3d 745, 752-54 (10th Cir. 2005) (heart attack satisfied the objective element); Martinez v. Beggs, 563 F.3d at 1088-89 (death resulting from heart attack satisfied the objective element).

Here, the ultimate result, death, constitutes a serious medical condition.  However, Mr. Jimenez's symptoms prior to April 3, 2021, were consistent with congestion and an ear infection. As soon as Mr. Jimenez complained of shortness of breath he was sent to the hospital.   Moreover, the undisputed material facts do not support the conclusion that the Wexford Defendants had the requisite state of mind to meet the subjective elements of deliberate indifference.

**2. Subjective Element of deliberate indifference test**

The subjective element of the deliberate indifference test is met if the plaintiff demonstrates that the defendant knew the plaintiff was at substantial risk of harm and disregarded that risk by failing to take reasonable measures to address the risk.  Callahan v. Poppell, 471 F.3d 1155, 1159 (2006).  The *mens rea* required for subjective deliberate indifference is on par with criminal recklessness.  Farmer, 511 U.S. at 836.  Awareness and conscious disregard of the risk is required because those officials "who lacked knowledge of a risk cannot be said to have inflicted punishment" in a manner that violates the Eighth or Fourteenth Amendments.  DeSpain v. Uphoff, 264 F.3d 965, 975 (10th Cir. 2001).  "If an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability under this standard."  Id.

The Tenth Circuit has identified three circumstances in which deliberate indifference can be found: "First, a doctor may recognize an inability to treat a patient because of the seriousness of the medical condition and a lack of expertise but decline or unnecessarily delay a referral. Second, a doctor may fail to treat a medical condition 'so obvious that even a layman would recognize the condition.'  Finally, a doctor could completely deny care even though he observes recognizable symptoms which could signal a medical emergency."  Heidtke v. Corrections Corp. of America, 489 Fed. Appx. 275, 280 (10th Cir. 2012) (unpublished disposition), citing Self, 439 F.3d at 1230.

As stated previously, deliberate indifference to an inmate's serious medical needs can be found where a health care provider recognizes his or her inability to treat a patient because of the seriousness of the medical condition and lack of expertise but declines or unnecessarily delays a referral.  Self, 439 F.3d at 1230.  In such a situation, the healthcare provider's role is to act as a gatekeeper rather than a treating provider:

> Ordinarily, a medical professional will not be liable for this … kind of deliberate indifference, because he is the person who provides the treatment.  If, however, the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care.

Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000).  Thus, a physician assistant was not entitled to summary judgment where disputed evidence called into question whether he should have sent his inmate patient to the hospital.  Id. at 1212.

Applying the Sealock standard, the Tenth Circuit held a nurse who refused to assess or diagnose an inmate complaining of chest pain because the infirmary was closed was not entitled to summary judgment on deliberate indifference.  Mata, 427 F.3d at 758-59.  In contrast, another nurse, who misread the inmate's EKG, nonetheless was entitled to summary judgment, because the nurse referred the inmate patient to a higher-level provider.  Id. at 759.  A nurse practitioner who misdiagnosed the inmate patient also was entitled to summary judgment on deliberate indifference, because the nurse practitioner sent the patient's latest EKG to a physician, who read it correctly and ordered the patient be transported to the hospital.  Id. at 760.  As these holdings show, a healthcare provider does not have to be right.  Rather, the law requires the provider to know when to ask for help, and to ask for that help.

"[I]n the Tenth Circuit, it has been established since at least 2006 that a medical

professional who knows of and appreciates an inmate's serious risk of medical harm must make a good faith effort to assess him in order to escape a claim for deliberate indifference. Where that effort is made, even a negligent misdiagnosis will not be considered deliberate indifference[.]" Al-Turki v. Ballard, No. 10-cv-02404-WJM-CBS, 2013 WL 589174, *12 (D.Colo. Feb. 14, 2013) (internal citation omitted) (unpublished disposition) (holding a nurse who refused to see a patient was not entitled to qualified immunity). "[W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." Self, 439 F.3d at 1232-33.

Moreover, courts are to view the provider's care through the prism of what the provider knew, or should have known, at the time the provider saw the patient. "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met. Indeed, *our subjective inquiry is limited to consideration of the doctor's knowledge at the time he prescribed treatment for the symptoms presented*, not to the ultimate treatment necessary." Self, 439 F.3d at 1233 (emphasis supplied ). Any other approach would allow deliberate indifference to an inmate's serious medical needs, so long as subsequent treatment by another medical professional averted a medical emergency. Id., at 1234, citing Mata, 427 F.3d at 756.

C.    **Supervisory liability for unconstitutional policy or practice**

Section 1983, does not authorize liability under a theory of *respondeat superior*. Estate of Booker v. Gomez, 745 F.3d 405, 435 (10th Cir. 2014); Est. of George v. City of Rifle, Colorado, 85 F.4th 1300, 1320 (10th Cir. 2023). Instead, supervisory liability may be imposed under § 1983 only "when a supervisor's subordinates violated the Constitution and the plaintiff can demonstrate an affirmative link between the supervisor and the violation, which includes showing (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." Valdez v.

11

Macdonald, 66 F.4th 796, 834 (10th Cir. 2023) (quoting Dodds v. Richardson, 614 F.3d 1185, 1195–98 (10th Cir. 2010)) (internal quotation marks omitted).

Admittedly, "[t]he contours of ... supervisory liability are still somewhat unclear after [the Supreme Court decided] Iqbal, which 'articulated a stricter liability standard for ... personal involvement.' " Dodds, 614 F.3d at 1198 ("Much has been made about [the supervisory-liability] aspect of Iqbal, but consensus as to its meaning remains elusive."). "Even so, our 'particularized approach [still] applies with full force when a plaintiff proceeds under a theory of supervisory liability.'" Pahls v. Thomas, 718 F.3d 1210, 1226 (10th Cir.2013). The Tenth Circuit requires plaintiffs to demonstrate "that each defendant acted with the constitutionally requisite state of mind by identify[ing] ... specific policies over which particular defendants possessed supervisory responsibility[ ] that violated their clearly established constitutional rights." Id. at 1228.

Pursuant to  Monell v. Dept. of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018 (1978), a municipality cannot be liable under Section 1983 solely because of injuries inflicted by employees or agents. Instead, an entity under contract to provide services to inmates at a jail can only be liable under Section 1983 when that entity's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the constitutional injury. Monell, 436 U.S. at 694; *see also* Estate of Blodgett v. Correct Care Solutions, LLC, 2018 WL 6528109 (D.Colo. December 12, 2018).

Since a theory of municipal liability or supervisory liability cannot be premised on one of vicarious liability, a plaintiff must identify the policy or custom that caused the injury. duBois v. Payne County Bd. of County Com'rs, 543 Fed.Appx. 841 (10th Cir. 2013) (citing Schneider, 717 F.3d at 769). A municipal policy or custom may be "(1) an officially promulgated policy; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final

policymaking authority; (4) the ratification by final policymakers of the decisions of their subordinates; or (5) the failure to adequately train or supervise employees. Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010). As with supervisory liability, a municipality may be liable only if a municipal actor committed a constitutional violation. Martinez v. Beggs, 563 F.3d 1082, 1092 (10th Cir. 2009), (rejecting the argument that "the county can be liable, even if no individual government actor is liable").

Plaintiff's Monell allegations rely entirely on group pleading and vague assertions of unspecified policies or customs. The Complaint identifies no Wexford policy, training practice, or widespread custom that was the moving force behind a constitutional violation. Courts regularly dismiss Monell claims on this basis. *See* Bryson, 627 F.3d at 788.

**D**. **Negligence is not Deliberate Indifference**

Deliberate indifference is a difficult standard to meet because it requires a "higher degree of fault than negligence, or even gross negligence." Barrie v. Grand County, Utah, 119 F.3d 862, 869 (10th Cir. 1997), citing Berry v. City of Muskogee, 900 F.2d 1489, 1495-96 (10th Cir. 1990). A "deliberate indifference claim is actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious." Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006).

As such, a complaint that merely alleges a healthcare provider was negligent in diagnosing or treating a medical condition does not state a claim of deliberate indifference. Green v. Branson, 108 F.3d 1296, 1303 (10th Cir. 1997). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Kikumura v. Osagie, 461 F.3d 1269, 1291 (10th Cir. 2006), overruled on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, (2007), as explained in Robbins v. Oklahoma, 519 F.3d 1242, 1246–47 (10th Cir. 2008) (internal quotation marks omitted). "The fact that an inmate may prefer or believe that another course of treatment

13

was warranted is not evidence of a constitutional violation." Duran v. Curry Cnty. Adult Det. Ctr., 2013 WL 12172090, at *9 (D.N.M. July 29, 2013), citing Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999). See Spencer v. Abbott, 731 F.Appx. 731, 733, 741-46 (10th Cir. 2017) (unpublished disposition) (physician assistant who misdiagnosed inmate as suffering from muscle spasm rather than stroke was not deliberately indifferent because the diagnosis was "reasoned" given that the inmate presented with a prominent spasm in his left trapezius muscle and initially responded positively to muscle spasm treatment).

## IV.   ARGUMENT

### A. Plaintiff was provided with treatment, refuting Plaintiff's claims of deliberate indifference, as Plaintiff cannot establish the subjective element.

Wexford Defendants provided medical care to Mr. Jimenez based on his symptoms and altered that treatment as new information came to light. Indeed, the treatment provided refutes any allegation that Wexford Defendants were indifferent to his well-being, deliberately or otherwise. Wexford personnel assessed Mr. Jimenez, treated him based on his symptoms, and adjusted his treatment, including an elevation of care in response to new information. This ultimately resulted in Mr. Jimenez being transferred to the hospital, even though his initial symptoms were consistent with an ear infection. Instances in which inmates were provided objectively less effective or prompt care than the care provided to Mr. Jimenez have been found to be constitutionally adequate.

Dr. Rieger opines that the medical care provided to Mr. Jimenez was consistent with accepted standards of correctional healthcare. He noted that "significantly abnormal vital signs were seen only on April 3, 2021, and [Jimenez] never had a fever" — a symptom present in more than ninety percent of infective endocarditis cases (Ex. C at 13–14). Because Mr. Jimenez presented with neither fever nor a heart murmur until his emergency room admission, "his

14

underlying condition can be considered occult, and the diagnosis was less than obvious" (Ex. C at 14). Dr. Rieger further explained that Mr. Jimenez had "frequent, broad, and easy access to nursing assessment during his confinement, and overall, his access to care was excellent" (Ex. C at 16). Although some documentation could have been more complete, Dr. Rieger stated that such omissions "did not alter the clinical course or outcome" (Ex. C at 15–16). Indeed, Dr. Rieger's opinions show that Mr. Jimenez received care consistent with accepted medical standards, and courts have held that even less thorough or effective treatment than this does not amount to deliberate indifference.

In Heidtke, for example, the plaintiff broke his arm in a prison softball game. 489 Fed. Appx. at 277. The physician at the prison, not realizing the seriousness of the injury, placed the plaintiff's arm in a splint and told the plaintiff to elevate and ice his arm. Id. Several weeks later, when the plaintiff was still experiencing pain, the doctor ordered an x-ray and a follow-up visit in a few weeks. Id. The plaintiff saw the prison physician three times, and the physician's only action was to re-wrap the bandage, take x-rays, and prescribe Naprosyn for the pain. Id. at 277-78. Eventually, a new physician referred the plaintiff to an orthopedic surgeon, who referred the plaintiff to a neurologist. Id. at 278. The plaintiff was diagnosed with nerve damage from the break and sued for Eighth Amendment violations. Id.

The Tenth Circuit upheld a grant of summary judgment in favor of the physician. Id. The Tenth Circuit held that the plaintiff did not meet the subjective prong of the deliberate indifference test: None of the situations in which deliberate indifference had been found applied. Id. at 281-84. The physician did not recognize an inability to treat the patient; he believed that the break was not serious. Id. at 283. Moreover, the physician did not fail to treat a condition that was obvious, even to a layperson: While it might have been obvious that the patient had a break, it was not

15

obvious to a lay person that the break was too serious to be treated in the manner in which the physician was treating it.  Id. at 282-83.  Finally, it was clear that the physician did not completely fail to treat the patient: He put the arm in a splint, ordered medication, and took x-rays.  Id. at 282.  Accordingly, there was no deliberate indifference, despite the physician's failure to detect the nerve complications and refusal to order the prison to assign the patient a lower bunk, to prevent him from having to climb.  Id. at 277-78.

Similarly, the undisputed facts here demonstrate that Mr. Jimenez was provided with sufficient care to preclude a finding of deliberate indifference.  The period of treatment at issue is relatively short, one month.  Mr. Jimenez was admitted to CNMCF on March 8, 2021.  Statement of Material Facts (SMF) 1.  On March 10, 2021, Mr. Jimenez submitted a Health Services Request seeking medications for headaches and arthritis, and he received the requested medications the next day.  SMF 3.

On March 20, 2021, Mr. Jimenez complained to medical staff of nasal congestion and an inability to sleep.  SMF 4. He indicated that the issues had just begun recently.  Id.  Medical staff evaluated Mr. Jimenez on March 20, 2021, for conditions that do not rise to the level of a serious medical condition as a matter of law.  Id.

Then, two days later, on March 22, 2021, Mr. Jimenez reported that he was not feeling well. SMF 5   He was pale and sweaty.  Id. He complained he was wobbly.  Id.  He also said his vision was blurred and that he was seeing double.  Id.    In response to Mr. Jimenez's condition, a nurse stopped dispensing medication and contacted the on-call medical provider regarding Mr. Jimenez's presentation.  Id.  The provider ordered a complete blood count, or CBC. Id. Mr. Jimenez also reported that he had been vomiting.  Id.  He denied illicit drug use when questioned.  Id.  He

16

also reported a severe headache. Id  The nurse ordered a one-time dose of 650 milligrams of Tylenol. Id.

The interactions between Mr. Jimenez and Wexford providers on March 22, 2021, do not evidence that Mr. Jimenez was facing a serious medical condition, and so Plaintiff cannot demonstrate a violation of the objective prong of deliberate indifference.  But even assuming *arguendo* that they do, healthcare providers responded to Mr. Jimenez's symptoms and provided treatment reasonably related to those symptoms (the CBC, a diagnostic tool, and Tylenol for Mr. Jimenez's discomfort).  Moreover, Mr. Jimenez  specifically denied using illicit drugs when questioned by medical providers.  This is relevant because drug use can be the source of inmate endocarditis. Accordingly, medical providers would not necessarily consider endocarditis as a potential cause of Mr. Jimenez's otherwise generic symptoms and complaints.  Accordingly, Plaintiff cannot meet the subjective standard for deliberate indifference.

On March 24, 2021, Mr. Jimenez complained to medical staff about an earache. SMF 6. Matthew Rounseville, M.D., examined Mr. Jimenez in response to his complaint. Id.  Dr. Rounseville observed that Mr. Jimenez had swelling of the tympanic membrane. Id.  Mr. Jimenez denied hearing loss and reported that he did not have discharge or a sore throat. Id.  Dr. Rounseville gave Mr. Jimenez ear drops and ordered Keflex and Rocephin for seven days. Id.  These acts do not evidence deliberate indifference.

Two days later, on March 26, 2021, NP Kontasha Wise evaluated Mr. Jimenez to assess his right ear pain.  SMF 7. Notably, Mr. Jimenez reported that his pain was a lot better.  Id.  This is evidence that Wexford's treatment plan was working.  However, Mr. Jimenez also reported that his vision was a bit blurry.  Id.  In response, Mr. Jimenez was referred to have the next available

17

eye exam.  Id.  None of this conduct is evidence of deliberate indifference. Indeed, it is undisputed material evidence to the contrary.

Then on March 30, 2021, Mr. Jimenez submitted a medical request wherein he stated: "I think I got an ear infection cause the right side of my head has been throbbing painfully for 2 days. I am walking like I am drunk."  SMF 8.  Medical records indicate that on March 31, 2021, Mr. Jimenez was given a complete physical exam. SMF 9. At this encounter he reported no complaints. Id.  NP Wise reviewed previously drawn labs and ordered additional blood work.  Id.  No deliberate indifference occurred on March 31, 2021.  Indeed, Mr. Jimenez did not report any medical issues. As reflected in the medical records, Mr. Jimenez was seen at least six times before April 3, 2021, and his temperature was within normal limits at all recorded encounters. SMF ¶¶14-15.

On April 3, 2021, Mr. Jimenez presented to nurse Tiffany Howard, LPN, with complaints of shortness of breath and chest pain. SMF 11.  Nurse Howard spoke with NP Wise, who ordered Mr. Jimenez sent to the emergency room.  Id. Mr. Jimenez was transported to the University of New Mexico Hospital (UNMH) that day.  Id.  Mr. Jimenez was admitted to the intensive care unit on April 3, 2021, with endocarditis. SMF 12.  Mr. Jimenez died on April 4, 2021, at 1:45 pm.  SMF 13.

In summary, Wexford healthcare providers treated Mr. Jimenez in response to his initial complaints of congestion and then for the ear infection that followed.  His medical issues to all appearances had resolved by March 31, 2021.  Moreover, when Mr. Jimenez reported to medical staff on April 3, 2021, with shortness of breath, a new and objectively concerning symptom, Wexford personnel sent him to the hospital immediately.  Plaintiff cannot demonstrate any deliberate indifference under these facts and circumstances.  To the extent Plaintiff argues that Mr. Jimenez should have been sent to the hospital earlier, he can point to no symptoms that would have

alerted Wexford personnel that Mr. Jimenez had developed endocarditis before April 3, 2021. To the contrary, medical personnel responded to Mr. Jimenez's less serious medical complaints and then acted immediately when his condition worsened.

Significantly, no deliberate indifference was found in instances in which prison medical professionals provided less care than Mr. Jimenez received. For example, the Seventh Circuit upheld summary judgment in favor of a prison medical provider, Dr. Feinerman, in Walker v. Benjamin, 293 F.3d 1030 (7th Cir. 2002). The Seventh Circuit held:

> Dr. Feinerman was first contacted about Walker [inmate] by a prison nurse on July 19. At that time, Dr. Feinerman ordered an x-ray of Walker's hand, oral antibiotics, and an over-the-counter painkiller. The x-ray, which was reviewed by another physician, was negative for osteomyelitis, and Walker has not produced any evidence showing that Dr. Feinerman's treatment at that time was inadequate or inappropriate. Although Walker claims not to have received the antibiotics that were prescribed for him, he has produced no evidence showing that failure was in any way within Dr. Feinerman's control. On August 11, Dr. Feinerman was informed that a second x-ray showed displacement of the joint. Dr. Feinerman ordered a culture to determine the exact nature of the infection, and ordered another antibiotic to be given once the type of infection was verified. Again, Walker has presented no evidence that Dr. Feinerman was deliberately indifferent to Walker's medical needs, or that Dr. Feinerman's actions led to further injury. We agree with the district court that Dr. Feinerman's failure to prescribe intravenous antibiotics once osteomyelitis was diagnosed was at most negligent.

Walker at 1038.

Notably, unlike in Walker, where the provider allegedly failed to prescribe antibiotics after a diagnosis of osteomyelitis was known, Wexford providers sent Mr. Jimenez to the hospital as soon as he reported shortness of breath. Wexford Defendants simply did not exhibit the requisite culpable state of mind to be liable for a claim of deliberate indifference. Accordingly, based on the reasoning of Walker and other authority as applied to the undisputed facts here, the actions of Wexford providers were not negligent, and certainly not deliberately indifferent, as a matter of law. Accordingly, for these independently sufficient reasons, the Court should enter summary judgment

19

in favor of the Wexford Defendants, and against Plaintiffs, on all claims or causes of actions articulated in the operative Complaint.

**B. Plaintiff's claims of liability against individual Wexford Defendants fail because there are no facts showing that any of these individuals had the requisite state of mind to satisfy the subjective component or otherwise support vicarious liability.**

Plaintiff's claims against each of the individual Wexford Defendants fail because Plaintiff lacks facts showing that any of them had the requisite subjective awareness of a serious medical risk to Mr. Jimenez. None of the individuals named — Michael Hildenbrandt, Joseph Montoya, Keshab Paudel, M.D., Rajesh Sharma, Raul Noches, Sarah Cartwright, David Whipple, Lynnsey Vigil, or Heather Garza — provided direct care to Mr. Jimenez. Plaintiff's claims against them rely entirely on theories of supervisory or vicarious liability, which are not cognizable under 42 U.S.C. § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("each Government official ... is only liable for his or her own misconduct").  Further, nothing in the record shows that any Wexford defendant actually drew an inference of a substantial risk and then disregarded it

The Complaint does not allege specific acts or omissions by any individual defendant that violated Mr. Jimenez's constitutional rights. Rather, Plaintiff appears to presume that because Mr. Jimenez died, a constitutional violation occurred. Yet, generalized allegations of wrongdoing do not suffice under the deliberate indifference standard. No facts in the record show that any Wexford defendant knew Mr. Jimenez faced an immediate and serious medical threat and deliberately ignored that risk. To the contrary, when Mr. Jimenez exhibited acute symptoms on April 3, 2021, he was promptly referred to the hospital. SMF ¶¶ 11-12.

Even accepting Plaintiff's allegation that Mr. Jimenez complained of vomiting and lack of appetite (Doc. 1 ¶ 28), these symptoms are not obviously indicative of imminent death. The Complaint also alleges that Mr. Jimenez suffered from an earache and blurry vision (Doc. 1 ¶¶ 29–31), but neither symptom is inherently suggestive of a life-threatening condition. These align with

20

his diagnosis of otitis media, which was treated accordingly. Plaintiff's assertion that care should have been provided more quickly does not amount to a constitutional violation. See Self v. Crum, 439 F.3d 1227, 1233 (10th Cir. 2006). On March 31, 2021, Mr. Jimenez denied any complaints. SMF ¶ 10.

### 1. Lynnsey Vigil and Heather Garza

Plaintiff's allegations against Lynnsey Vigil and Heather Garza are facially inadequate to sustain a claim. Plaintiff's Complaint against Ms. Vigil and Ms. Garza is based entirely on a theory of vicarious liability and lacks any allegation that either Defendant personally promulgated or ratified an unconstitutional policy.

"[A] § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011). However, § 1983 "does not authorize liability under a theory of respondeat superior." Schneider v. City of Grand Junction Police Dept.,717 F.3d 760, 767 (10th Cir. 2013) (quoting Brown, 662 F.3d at 1164)); see also, Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

To establish supervisory liability, a plaintiff must show an "affirmative link" between the supervisor and the alleged constitutional violation. Schneider, 717 F.3d at 767 (citing Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010)). This requires "more than a supervisor's mere knowledge of his subordinate's conduct." Id. Rather, Plaintiff must establish: (1) personal involvement; (2) causation; and (3) the requisite state of mind. Id.

The Complaint alleges:

Defendants Lynnsey Vigil and Heather Garza both served as Wexford's Utilization Management Coordinator Nurses. As Utilization Management Coordinators, they participated in the utilization management process and were responsible for the

21

care, health, safety and proper medical treatment of Mr. Jimenez. They were agents of Wexford and NMCD, acting within the scope of their employment at all times relevant to this lawsuit." (Doc. 1 ¶ 22.)

The only other direct reference to these Defendants in the Complaint is similarly insufficient. Plaintiff asserts:

As Wexford's Utilization Management Coordinator Nurses, Defendants Lynnsey Vigil and Heather Garza were responsible for ensuring an effective and constitutionally adequate process by which referrals to outside medical providers were made and approved. Defendants Vigil and Garza failed to exercise these powers to end the inadequate training of identifying emergent infections and thereby maintained a policy or custom of inadequate medical care by relying on insufficiently trained medical staff who inadequately refer prisoners for outside care." (Doc. 1 ¶ 118.)

These two paragraphs fail to identify any specific act or omission by Ms. Vigil or Ms. Garza in connection with Mr. Jimenez's care. Plaintiff does not allege that either Defendant reviewed or denied a referral request, failed to act on a specific recommendation, or was aware of Mr. Jimenez's symptoms. That a Utilization Management Coordinator might have been involved in the review process generally is not enough to impose liability under § 1983. Plaintiff must show that each Defendant had actual knowledge of a serious medical need and deliberately disregarded it. The assertion that these Defendants were "responsible for ensuring an effective process" for referrals does not amount to a constitutional violation. Iqbal, 556 U.S. at 676–77. Nor does Plaintiff allege that any referral request concerning Mr. Jimenez was delayed or denied.

Because there was no constitutional violation in Mr. Jimenez's treatment, Plaintiff cannot demonstrate the three required elements to establish an affirmative link between either Ms. Vigil or Ms. Garza and any alleged harm. There is no allegation of personal involvement, no causal connection to any specific event, and no facts establishing the requisite state of mind. There is no evidence that either Vigil or Garza reviewed, delayed, or denied any referral request regarding Mr. Jimenez. Summary judgment is appropriate as to Ms. Vigil and Ms. Garza.

### 2.  Michael Hildenbrandt

Plaintiff's allegations against Michael Hildenbrandt are insufficient to support a claim under § 1983. The Complaint relies on vague, conclusory assertions and fails to identify any specific action or omission by Mr. Hildenbrandt that contributed to a violation of Mr. Jimenez's constitutional rights. The Complaint alleges:

> Michael Hildenbrandt served as Wexford's Director of Operations at all times relevant to this Complaint. As the Director of Operations, Mr. Hildenbrandt was responsible for overseeing Wexford's operations within New Mexico prisons and ensuring that Wexford met its duty to provide constitutionally adequate medical care to prisoners within the NMCD facilities in which it operated.

Doc. 1 at ¶ 14.

This allegation merely describes a supervisory role and contains no facts indicating that Mr. Hildenbrandt was aware of Mr. Jimenez's medical condition, involved in his care, or made any decision affecting his treatment.

As discussed above, a supervisor can only be held liable under § 1983 for his own unconstitutional actions or policies — not for the actions of subordinates. *See* Pena v. Greffet, 922 F. Supp. 2d 1187, 1218 (D.N.M. 2013) ("Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for the employees' tortious acts.") (quoting Barney v. Pulsipher, 143 F.3d 1299, 1307–08 (10th Cir. 1998)). Likewise, Iqbal makes clear that liability cannot be based on a defendant's title alone. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).  Moreover, as demonstrated by the undisputed facts, Mr. Jimenez received consistent and appropriate medical care throughout his incarceration. Because there was no underlying constitutional violation, there is no basis for supervisory liability. Summary judgment should therefore be granted in favor of Mr. Hildenbrandt.

23

### 3. Raul Noches

Plaintiff names Raul Noches as a defendant in the caption of the Complaint, but the body of the Complaint contains no factual allegations regarding his conduct, role, or involvement in Mr. Jimenez's care. This absence of factual allegations is fatal to Plaintiff's claim. A complaint must provide sufficient factual content to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Courts routinely dismiss claims against defendants where the complaint fails to attribute any specific conduct to them. *See* Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[C]omplaints that fail to isolate the allegedly unconstitutional acts of each defendant do not provide adequate notice."). Because Plaintiff fails to allege that Mr. Noches took any action or had any involvement with respect to Mr. Jimenez's treatment, summary judgment should be granted in his favor.

### 4. Joseph Montoya, Keshab Paudel, M.D., Sarah Cartwright, David Whipple, Denise Jones, and Rajesh Sharma, M.D.

Plaintiff's claims against Wexford employees Joseph Montoya, Dr. Keshab Paudel, Sarah Cartwright, David Whipple, Denise Jones, and Dr. Rajesh Sharma fail because Plaintiff does not allege facts showing that any of these individuals had personal involvement in Mr. Jimenez's care or possessed the requisite state of mind to support a deliberate indifference claim. The Complaint relies on generalized and conclusory allegations that lump these defendants together without identifying what each one specifically knew or did. This type of group pleading is insufficient under § 1983. *See* Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[T]he complaint must 'make clear exactly who is alleged to have done what to whom.'"). There is no allegation that any of these individuals saw Mr. Jimenez, made or reviewed treatment decisions, or were made aware of his medical complaints.

24

At most, Plaintiff alleges that some of these individuals held supervisory or administrative roles. For example, Mr. Montoya is alleged to be Wexford's Health Services Administrator at CNMCF, and Dr. Paudel is alleged to be Wexford's Regional Medical Director. But supervisory roles, without personal participation in the allegedly unconstitutional conduct, are not sufficient to establish liability under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009); Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 767 (10th Cir. 2013).

Plaintiff also fails to allege any facts that would support the required subjective component of a deliberate indifference claim. There is no evidence in the record suggesting that these defendants were subjectively aware of a serious medical risk to Mr. Jimenez and chose to disregard it. Nor is there any showing of causation or a policy decision attributable to these individuals that led to a constitutional violation. *See* Dodds v. Richardson, 614 F.3d 1185, 1195–96 (10th Cir. 2010).  Because Plaintiff has not alleged or identified any personal conduct by these defendants that satisfies the elements of a deliberate indifference claim, summary judgment should be granted in their favor.

### 5.  Incorporation of NMCD's Systemic Arguments

To the extent Plaintiff relies on alleged systemic deficiencies, Wexford adopts and incorporates by reference the arguments set forth in NMCD's Motion for Summary Judgment (Doc. 67) . As NMCD explains, contemporaneous ACA accreditation and the April 2021 ACA audit found CNMCF in full compliance with medical standards; monthly CQI and oversight mechanisms provided continuous monitoring; constructive notice from stale audits, lawsuits, or media reports cannot substitute for actual knowledge under Farmer v. Brennan, 511 U.S. 825 (1994); staffing levels met accepted standards; and Plaintiff's financial-incentive theory is

unsupported. For the same reasons, Plaintiff's systemic allegations fail to establish Monell liability against Wexford.

## V.    CONCLUSION

For the reasons set forth above, the Wexford Defendants are entitled to summary judgment as a matter of law. The undisputed material facts show that Mr. Jimenez received ongoing and responsive medical care while incarcerated at CNMCF. Plaintiff cannot meet the subjective component of a deliberate indifference claim as to any individual defendant, and the record contains no facts demonstrating that any Wexford employee knowingly disregarded a serious medical need. Plaintiff's Monell and supervisory liability theories also fail for lack of supporting factual allegations.

Accordingly, Defendants Wexford Health Sources, Inc., Michael Hildenbrandt, Joseph Montoya, Keshab Paudel, M.D., Raul Noches, Sarah Cartwright, David Whipple, Denise Jones, Lynnsey Vigil, and Heather Garza respectfully request that the Court grant this Motion for Summary Judgment and dismiss all claims against them with prejudice.

Respectfully submitted,

PARK & ASSOCIATES, LLC

/s/ James J. Grubel
Alfred A. Park
James J. Grubel
*Attorneys for Wexford Defendants*
3840 Masthead Street, N.E.
Albuquerque, NM  87109
(505) 246-2805
apark@parklawnm.com
jgrubel@parklawnm.com

26

I hereby certify that a true and correct copy of the foregoing was served to all counsel of record via the court's e-filing system on this 18th day of September 2025:

 /s/ *James J. Grubel*
James J. Grubel